UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PICTOMETRY INTERNATIONAL CORPORATION.,

                    Plaintiff,                          DECISION & ORDER
          v.                                            09-CV-6517

GEOSPAN CORPORATION.,

                    Defendant.

_____

## Procedural Background

This patent infringement action was commenced on October 13, 2009 (Docket # 1).  By text Order of Judge David G. Larimer on December 1, 2009 (Docket # 8), all pretrial motions have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(A)-(B).  Pending before the Court is defendant Geospan Corporation's motion (Docket # 11) to change venue to the District of Minnesota.

## Relevant Facts

The Technology in Dispute:  Photogrammetry is the science of making reliable measurements from photographs.  The parties to this dispute are competitors in the photogrammetric industry.  Each owns a patent related to photogrammetry that it contends is the core of its business.  Defendant Geospan Corporation ("Geospan") owns U.S. Patent No. 5,633,946 (the "'946 Patent").  Plaintiff Pictometry International Corporation ("Pictometry") owns U.S. Patent No. 5,247,356 (the "'356 Patent").

Geospan's '946 Patent is entitled "Method and Apparatus for

Collecting and Processing Visual and Spatial Position Information from a Moving Platform." See Exhibit "A" attached to the Declaration of Mark W. Lee, Esq. (hereinafter "Lee Decl.") annexed to Docket # 11. According to Geospan, its patented technology can provide high resolution, accurate, multi-angle oblique aerial and integrated 360° street-level imagery to the photogrammetric industry without the need for ground control, among other things. See Declaration of Theodore M. Lachinski (hereinafter "Lachinski Decl.") at ¶¶ 2-4. Geospan sells "GEOVISTA" imagery products which perform various visual search, 3D modeling and mapping functions using the technology described in Geospan's '946 Patent.

Pictometry's '356 Patent is entitled "Method and Apparatus for Mapping and Measuring Land." See Exhibit "B" attached to Lee Decl. According to Pictometry, its '356 Patent "is directed to the apparatus and method used by Pictometry to capture and process digital imagery which it uses in its aerial photogrammetry business." See Plaintiff's Memorandum in Response (Docket # 20) at p. 2.

The Dueling Lawsuits: On March 20, 2008, defendant Geospan filed suit against Pictometry in the Federal District in Minnesota,[1] alleging three separate claims related to the parties' '356 and '946 patents (hereafter the "Minnesota Action"). See Exhibit "E" attached to Lee Decl. Specifically, Count I charged

_____

[1] Civil Case No. 08-CV-00816-ADM-JSM.

2

Pictometry with infringing Geospan's '946 Patent, Count II sought a declaratory judgment that Geospan did not infringe Pictometry's '356 Patent, and Count III sought a declaratory judgment that Pictometry's '356 Patent was invalid. See id. at ¶¶ 5-22. According to Geospan, it commenced the Minnesota Action because, inter alia, Pictometry sued two of Geospan's competitors (collectively known as "Multivision USA") in 2005 for infringement of Pictometry's '356 Patent, and as Pictometry's litigation with Multivision USA drew to a close, Pictometry sent a letter on January 29, 2008 to Geospan's President, Theodore Lachinski, on Pictometry's attorney's letterhead which (i) identified Pictometry's patent by number and included a copy; (ii) admitted that Pictometry had already reviewed Geospan's website for information on Geospan's products; (iii) identified Geospan's GEOVISTA products by name; (iv) declared that "it appears that the GEOVISTA oblique imagery products may incorporate the technology covered in the attached patent [the '356 Patent]"; (v) asked Geospan to review the '356 Patent and "let us know specifically how your oblique imagery products and services differ from the patented technology"; (vi) referenced Pictometry's prior litigation with other industry participants; (vii) attached the claim construction order from the litigation against other industry participants; and (viii) requested contact at the "first opportunity" and "prompt attention" to these matters. See Exhibit "C" attached to Exhibit

3

"E" annexed to Lee Decl.  In a letter dated February 7, 2008, Mr. Lachinski responded by noting that Geospan had "forwarded [Pictometry's] request for information to our attorney for input and we will provide a detailed response as soon as possible."  See Exhibit "D" attached to Exhibit "E" annexed to Lee Decl.  On March 10, 2008, Pictometry's attorney sent another letter to Geospan, stating the following:

> While my client appreciates the relative complexity inherent in comparing your technology to the claims of the patent, we believe more than enough time has passed to enable you and your attorney to complete such an analysis.  Accordingly, we request that you or your counsel provide the promised "detailed response" on or before March 24, 2008.

See Exhibit "E" attached to Exhibit "E" annexed to Lee Decl. Geospan maintains that it filed the Minnesota Action in order to resolve the dispute between the parties regarding the '356 and '946 patents.

Rather than answering the complaint in the Minnesota Action, Pictometry moved to dismiss the two counts related to the '356 Patent (Counts II and III) on grounds that Geospan failed to state a case or controversy under Article III of the Constitution. Pictometry told the court in the Minnesota Action that it "has not taken a position on whether Geospan has infringed the '356 Patent" and therefore there was nothing for the court to determine. Geospan Corp. v. Pictometry Int'l Corp., 598 F. Supp. 2d. 968, 970 (D. Minn. 2008).  The Minnesota court agreed and granted

4

Pictometry's motion to dismiss. See id. at 971. In its Decision, the Minnesota court found that "Pictometry has not demonstrated an intent to litigate against Geospan, has not accused Geospan of infringement, and has not demanded licensing fees. There is no evidence that Pictometry has pursued litigation against Geospan." Id. Accordingly, the Minnesota court dismissed without prejudice the counts (Counts II and III) relating to the '356 Patent from the Minnesota Action. Id.

Less than a year after the Minnesota court issued its decision, Pictometry changed course with respect to its '356 Patent. After advising the Minnesota court that Pictometry "has not taken a position on whether Geospan has infringed the '356 Patent," Pictometry filed the instant action against Geospan in the Western District of New York charging that Geospan has, in fact, infringed Pictometry's '356 Patent.

Motion to Change Venue: Currently pending before the Court is defendant Geospan's motion to change venue (Docket # 11). Geospan seeks to transfer this action to the District of Minnesota, "where it may, at the Minnesota Court's discretion, be either consolidated with the action pending there or simply treated as a related case." See Defendant's Memorandum of Law annexed to Docket # 11 at p. 7. Geospan maintains that the Court should grant its request to transfer the action pursuant to 28 U.S.C. § 1404(a) and/or the "first filed" rule. Id. at p. 9. In response, Pictometry contends

5

that the instant action should remain in New York because the first-filed rule does not apply and a transfer to Minnesota under 28 U.S.C. § 1404(a) is not warranted.  See Plaintiff's Memorandum in Response (Docket # 20) at pp. 6-23.  On February 19, 2010, the Court held a hearing and arguments were heard from both parties. For the reasons that follow, defendant's motion to change venue (Docket # 11) is **granted**.

## Discussion

"[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992).  Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  When deciding whether to grant a transfer request pursuant to 28 U.S.C. § 1404(a), courts generally engage "in a two-pronged inquiry." Blechman v. Ideal Health, Inc., 668 F. Supp. 2d 399, 403 (E.D.N.Y. 2009).  "First, the court asks whether the action sought to be transferred is one that might have been brought in the district court in which the movant seeks to have the case litigated."  Id. (citations and quotation marks omitted).  Here, Pictometry does not dispute that the instant action could have been brought in the

District of Minnesota or that the proposed venue in Minnesota would be proper.

Second, if the proposed venue is proper, the court "considers whether the transfer will serve the convenience of witnesses and parties and is in the interests of justice." Id. When analyzing the second prong, courts consider various factors, including (*inter alia*): the plaintiff's choice of forum, convenience of witnesses, location of documents and witnesses, convenience of the parties, the locus of the event or omission, the availability of ways to compel uncooperative witnesses, and the relative means of the parties. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006).

A.    **The "First Filed Rule"**:    As a general rule, where identical actions are proceeding concurrently in two federal courts, "the first suit should have priority." Employers Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 274-75 (2d Cir. 2008). This is the so-called "first-filed" rule. The first-filed rule "usually applies when identical or substantially similar parties and claims are present in both courts." *In re Cuyahoga Equip. Corp.*, 980 F.2d at 116-17. "[W]here the overlap between the two suits is less than complete," however, the judgment is made on a case by case basis, "based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." TPM

7

<u>Holdings, Inc. v. Intra-Gold Indus., Inc.</u>, 91 F.3d 1, 4 (1st Cir. 1996). The first-filed rule should be weighed against the other aforementioned considerations, as well as any other "special circumstances" which may preclude its application. <u>See</u> <u>Employers Ins. of Wausau</u>, 522 F.3d at 275. In other words, the first-filed rule is a presumption that must be overcome by the weight of the remaining factors. <u>Id.</u>

Here, Pictometry admits that "the cases involve similar technologies" but argues that the patents are different, have different inventors, different claims and different specifications. <u>See</u> Pictometry's Response to Motion to Transfer Venue (Docket # 20). I agree. Although the two actions are very similar, involving the same parties and similar photogrammetric technologies, they are not "identical" and do not involve identical claims. As a result, I find that the first filed Minnesota Action does not automatically have priority. Accordingly, the Court must consider each of § 1404's factors to determine in which forum the action should proceed.

**B.  Application of the "Case by Case" Factors.**

1.  <u>The convenience of the parties</u>: Pictometry is a Delaware corporation with its principle place of business (its headquarters) in Rochester, New York. Pictometry asserts that the District of Minnesota is not as "equally convenient" as this District for its purposes. Geospan is a Minnesota corporation with its principle

8

place of business (its "sole" place of business) in Minnesota. Geospan seeks to have the instant action proceed in Minnesota. Since the defendant resides in Minnesota, and Pictometry is currently defending a related action in Minnesota, it appears that this factor favors transfer to the District of Minnesota.

2. The convenience of the witnesses: Geospan asserts that "Minnesota is the state of residence for virtually all of GEOSPAN's witnesses." See Defendant's Memorandum of Law annexed to Docket # 11 at p. 18. Geospan maintains that since its sole place of business is in Minnesota, all of its employee witnesses are located in Minnesota. Id. at p. 19. Geospan further argues that five of the six named inventors of its Patent -- whose testimony Geospan contends is "essential" -- reside in Minnesota. Id. Geospan contends that since the "vast majority of important witnesses reside in Minnesota," this factor weighs heavily in transferring the instant action to Minnesota.

Pictometry asserts that it has identified seventeen individuals who possess relevant information, twelve of whom are party witnesses employed by either Pictometry or Geospan, and four of whom reside in New York. See Plaintiff's Memorandum in Response (Docket # 20) at p. 19. Pictometry further argues that "a review of the description of information that each party's witnesses are claimed to have tilts this factor in Pictometry's favor." Id. Pictometry contends that although Geospan claims to have several

9

necessary witnesses whom reside in Minnesota, "the relevance of the information allegedly possessed by several" of these witnesses "is suspect." Id. at p. 20.

The Court considers this factor neutral because it appears that most of the witnesses are party witnesses employed by either the plaintiff or the defendant and are scattered throughout New York and Minnesota. See MasterCard Int'l, Inc. v. Lexcel Solutions, Inc., No. 03 Civ. 7157(WHP), 2004 WL 1368299, at *7 (S.D.N.Y. June 16, 2004)(finding convenience of the witnesses to be a neutral factor where most, if not all, witnesses would be employees of the parties).

3.   The locus of operative facts and relative ease of access to sources of proof: Geospan argues that Minnesota is the locus of operative facts, as Minnesota is the location where its allegedly infringing patent was designed, developed, produced and tested. See Defendant's Memorandum of Law annexed to Docket # 11 at p. 20. Geospan contends that

> all the documents and physical evidence related to that invention and reduction to practice are in Minnesota. Similarly, all of the documents, computer code, software components and other physical equipment related to design, development, testing and manufacture of the GEOVISTA product are in Minnesota... [and] all of the documents, correspondence, marketing materials, sales information, technical product information and computer code related to the production, marketing, sale and support of the GEOVISTA product are located in Minnesota... Financial information about GEOSPAN and its sales are also located in Minnesota.

Id. at p. 21.   Geospan argues that "[a]bsolutely no witnesses or

10

documents related to the design, development, testing, production, marketing, sale, or support of the GEOVISTA product are located in New York." Id.

Pictometry asserts that this factor is neutral, as "each party's documents are located at their respective headquarters." See Plaintiff's Memorandum in Response (Docket # 20) at p. 21. Pictometry further argues that "[g]iven the prevalence of the use of electronic documents, rapid copying and overnight shipping, this factor assumes much less importance than it did formerly." Id.

Although the Court recognizes that both jurisdictions contain potentially important information and sources of proof, most of the documentation regarding the patent at issue -- Geospan's '946 Patent -- is likely to be found in Minnesota. The defendant's research, development, sales and testing in conjunction with the '946 Patent are located in Minnesota. Accordingly, the Court finds that this factor weighs in favor of transfer to Minnesota. See Williams Advanced Materials, Inc. v. Target Tech. Co., LLC, No. 03-CV-276-A, 2007 WL 2245886, at *6 (W.D.N.Y. Aug. 1, 2007)("In a patent infringement action, the locus of operative facts is where the research, design and development of the infringing product occurred.").

4.    The weight accorded the plaintiff's choice of forum: Ordinarily, the plaintiff's choice of forum is accorded significant weight. See In re Warrick, 70 F.3d 736, 741 (2d Cir. 1995)(finding

11

that in ruling on a motion to transfer venue, the trial judge is to give the plaintiff's choice of venue "substantial consideration"). This "is particularly so when the plaintiff resides in the judicial district where the suit was filed." Air-Flo M.G. Co. v. Louis Berkman Co., 933 F. Supp. 229, 233 (W.D.N.Y. 1996). "Where there is little material connection between the case and the chosen forum, however, a plaintiff's choice of forum carries less weight." In re Stillwater Mining Co. Secs. Litig., No. 02 Civ. 2806(DC), 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003); see also Whistler Grp., Inc. v. PNI Corp., No. Civ.A.3:03-CV-1536-G, 2003 WL 22939214, at *2 (N.D. Tex. Dec. 5, 2003)("[T]he plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district."). Thus, the plaintiff's choice of forum "is not necessarily dispositive." Eichenholtz v. Brennan, 677 F. Supp. 198, 201 (S.D.N.Y. 1988).

Here, the Court does not accord Pictometry's choice of forum "great weight," as it appears that most of the alleged infringement (i.e. operative facts) occurred outside this district. The Court finds, however, that this factor does slightly favor Pictometry, as Pictometry resides in this district and alleges that "the circumstances giving rise to the claim of infringement have a significant connection to" New York because "Geospan has committed acts of infringement 'throughout the United States, including the State of New York.'" See Plaintiff's Memorandum in Response

12

(Docket # 20) at p. 18 (quoting Complaint [Docket # 1] at ¶ 4).

5.    The availability of ways to compel uncooperative witnesses: The Court finds that this factor should be deemed neutral as the vast majority of witnesses will be employees of either the plaintiff or the defendant.

6.    The relative means of the parties: The Court considers this factor neutral as well. Both parties agree that the relative means of the parties is entitled little weight since both are viable corporate entities.

7.    The forum's familiarity with the governing law: The Court also considers this factor neutral, as this Court and the District of Minnesota court are equally familiar with the federal laws governing patent cases and the associated legal issues.

8.    Trial efficiency and the interest of justice: Under the "case by case" approach, this factor strikes the Court as important under the circumstances presented here.   In patent cases, where complicated technologies are at issue, the "interest of justice" factor is often times the most important factor in the transfer analysis. See DataTreasury Corp. v. First Data Corp., 243 F. Supp. 2d 591, 593-94 (N.D. Tex. 2003).    "Transfer is particularly appropriate where related cases involving the same issues are pending in another court." Id. at 594. Courts have held that "the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer."    Id.    Moreover,

13

judicial economy may favor transfer to another court more familiar with the patent issues involved in the suit. "Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesireable." Id. Transfer in complicated patent cases may eliminate the possibility of inconsistent rulings. See id. at 595 (noting the importance of claim construction in patent cases and finding that transfer in such cases "is particularly appropriate . . . where the court is required to interpret the claims of the patent in-suit"); see also Whistler Grp., Inc. v. PNI Corp., 2003 WL 22939214, at *5 ("By permitting two different courts to interpret the same patent claims, there is a heightened risk of inconsistent rulings which, in turn, promotes uncertainty and impedes the administration of justice.").

As stated earlier, the legal and factual issues in the two actions are not identical. Nevertheless, the similarities overwhelm the differences. Geospan and Pictometry are business competitors. Each owns a photogrammetric patent. Each accuse the other of infringing on their patent. Allowing one court to engage in the claim construction process involving similar technology patented by competitors in the same industry (photogrammetry) not only promotes judicial economy, but also provides the parties with the best opportunity for consistent determinations on legal issues, claim terminology and claim construction.

One need only examine the posture of the Minnesota action and

14

the docket entries in that case to find persuasive evidence that transfer in the interests of justice is appropriate.  First, it is clear that the parties will rely on much of the same photogrammetric prior art and will use many of the same important witnesses in pressing their claims and defenses in the two actions. Second, it would not promote judicial economy to have two judges in two different courts construing similar claim terms in the '946 and '356 patents.  See Avaya, Inc. v. Mitel Networks, Corp., 460 F. Supp. 2d 690, 692 (E.D. Va. 2006)(finding that "the prospect of having two or more courts construe the same, or essentially similar, claim terms in the same or related patents may well warrant transfer" because "[w]here two or more courts are required to construe the same or essentially similar claim terms in the same or related patents, the result is an uneconomical use of judicial resources and the risk of conflicting judicial determinations"). Third, transferring the Rochester action promotes efficiency for both the court and the litigants because only one court will have to be educated on the patents at issue and the complicated technology they involve.  Indeed, the Minnesota court has a substantial "head start" in understanding the legal and factual issues present.  The Minnesota court has spent approximately two and a half years litigating plaintiff's patent and, thus, has already invested substantial time scheduling conferences (see District of Minnesota Civil Case # 08-cv-00816 at Dockets ## 38,

15

41, 51), holding hearings (see id. at Dockets ## 29, 69, 116, 128, 129), including a Markman Hearing (see id. at Docket # 165), presiding over discovery disputes (see id. at Docket # 43, 89, 163), and ruling on various motions (see id. at Dockets ## 32, 71). Moreover, the Minnesota court has reviewed the Markman and Claim Construction Briefs (see id. at Dockets ## 135, 138) submitted by the parties.    The Minnesota court issued a written memorandum opinion and order on claim construction (see id. at Docket # 166), evincing its understanding of the underlying technology, the state of the art of photogrammetry at the time of the invention claimed in the '946 Patent, and the differences between aerial and ground-based photogrammetric systems.  By retaining jurisdiction over this case, this Court would cause unnecessary duplication of the Minnesota court's efforts.    In fact, the Minnesota Action may be far enough along in the litigation process that rulings already made there would control or have precedential value on issues (discovery, claim terms, claim construction, etc.) that inevitably will arise in the action before this Court.    In sum, under the facts present here, the judicial economy factor is so heavily weighted that it alone supports transfer to the District of Minnesota.    See Xerox Corp. v. Litton Indus., Inc., 353 F. Supp. 412, 413 (S.D.N.Y. 1973)(finding that related patent suits involving "complex and difficult issues" should be resolved in the same forum to prevent "an extravagantly wasteful and useless

duplication of the time and effort of the federal courts")(citation and internal quotation omitted); <u>Whistler Grp., Inc. v. PNI Corp.</u>, 2003 WL 22939214, at *5 (finding that related patent cases should be resolved in the same forum "whenever possible").

### Conclusion

Based on the factors set forth above, including (1) the Minnesota court's familiarity with the parties, patents and technologies at issue, and (2) the duplication of efforts involved with two courts litigating similar patent claims brought by the same parties, the interests of justice are better served by transfer of this action to the Federal District of Minnesota. Accordingly, defendant Geospan's motion to change venue (Docket # 11) is **granted**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:    September 28, 2010
          Rochester, New York

17